[No. 22762.   Department Two.   December 18, 1930.]

THE STATE OF WASHINGTON, *Respondent,* v. ALBERT DUNN, *Appellant.*[1]

[1]Reported in 294 Pac. 217.

*W. C. Donovan,* for appellant.

*Chas. W. Greenough* and *Ralph E. Foley,* for respondent.

MILLARD, J.—By information of two counts, Albert Dunn and Joe Jamieson were jointly charged with the crime of bootlegging and with the crime of having intoxicating liquor in their possession with intent to sell the same. The trial resulted in verdict of guilty on both counts as to both defendants. From the judgment and sentence pronounced in accordance with the verdict, defendant Dunn prosecutes this appeal.

Error is first assigned upon the overruling of the motion for an instructed verdict of not guilty. Counsel contends that there was no evidence from which the jury could find that the appellant carried intoxicating liquor about with him for the purpose of unlawful sale, or that he had intoxicating liquor in his possession with intent to sell the same.

It is argued that the liquor was the property of Jamieson, who got it from an ice box in the back of his store; that Dunn never saw it or handled it; that there is no evidence Dunn had possession of the liquor, carried the same about and intended to unlawfully sell the same.

The evidence is, in substance, as follows: Joe Jamieson, with his wife and child, lived at the corner of Napa and Third streets in the city of Spokane, where they conducted a small grocery store and a gas filling station. The family lived in quarters adjoining the store at the rear. Two police officers, who were as-

signed to duty on the prowl car between four p. m. and twelve midnight, passed appellant Dunn in another car the night of October 23d, 1929. Recognizing him, they turned around to follow him, but he got away. The two officers testified that later on that night they met Dunn again, but he turned out the lights on his car and again escaped the officers. Riding around in that vicinity, the officers later noticed the appellant's car parked at the grocery store of Jamieson at Third and Napa streets. Officer Rummer got out of the car and went around to a window which was about five feet from the ground on the side of the store. The other officer drove the car through an alley and parked it nearby where he could watch the store. Rummer testified that, from where he was standing, he could see appellant and Jamieson standing in the back part of the store, and that he could hear part of their conversation. He testified, in part, as follows:

"Well, I see Dunn and Jamieson in the store through the window, and I could hear them talking, and Dunn said to Jamieson, 'Do you remember that woman down at the — Hotel?' And Jamieson said, 'Yes,' and he says, 'She has some more customers for us,' and they said some more that I couldn't understand what that was about. In a minute Dunn picked up a jug and says, 'I think you had better take this over to Napa to him tonight,' and he handed the jug to Jamieson, and Jamieson put it under his coat, and said 'All right, I will take it.' He said, 'Take over to the same place you took that half gallon before, at Mallon and Madelia; there will be a black Hudson coupe waiting there, and all you have got to do is just hand it to them and go on; everything is O. K. now.' At that moment I went to the front of the store and Jamieson came out, and Dunn opened the store door for Jamieson, and when he saw me he sat down at the radio and started to play the radio."

Rummer asked Jamieson for the whiskey, and it was handed to him. Dunn and Jamieson were both placed

under arrest. On the way down to the station, Officer Rummer said to Jamieson, "When we caught you before we thought you fellows would have laid off that kind of stuff," to which Jamieson replied, "Well, if you thought we were laying off, why were you after us?"

Jamieson denied that any conversation like that related by Rummer took place between him and Dunn. He testified that he had purchased the gallon of moonshine whiskey to take with him on a party he was to attend the night he was arrested; that he did not know where the party was to be held, but that a friend of his was going to call up that evening and inform him where to meet him; that appellant Dunn answered the phone when that friend called and that he told Dunn where to have Jamieson meet him. Dunn testified that he was in Jamieson's store the night in question; that he answered the phone and some one requested him to tell Jamieson to meet him on Mallon and Madelia; that he had nothing to do with the gallon jug of moonshine.

A question of fact was presented to the jury. It was for them to decide what weight and credibility should be given to the testimony of the witnesses. That they believed the officer and did not accept the stories of Jamieson and appellant as true, is reflected by their verdict.

The statement of appellant that a woman had some more customers for them at a certain hotel, taken in connection with all of the circumstances, could not mean anything other than that Jamieson and appellant were engaged in the liquor business and that the woman had obtained more customers for the liquor the two were selling; that these customers were in addition to others to whom Jamieson and Dunn had sold liquor. There is evidence that Jamieson was in

possession of intoxicating liquor, that he was carrying the same about, and that he intended to unlawfully sell the same. The case does not rest upon a presumption, but upon evidence sufficient to support the verdict.

Jamieson and appellant were partners. The evidence is to the effect that appellant picked up the liquor and handed it to Jamieson, who carried it from the rear of the store to his car, which was parked alongside the curb in front of the store; that Jamieson was arrested just as he was about to get into the car with the liquor on his way to deliver the liquor as directed by appellant. Though appellant himself did not carry the liquor about, he was equally guilty with Jamieson as a principal under Rem. Comp. Stat., § 2260, which provides that:

"Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured could not or did not entertain a criminal intent, shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him."

Counsel argues that the officer could not see Jamieson and appellant through the window, which was five feet from the ground, and that it would have been impossible for the officer at that point to have heard the conversation of Jamieson and appellant. Whether or not the officer saw and heard through the window

as testified to by him was a question of fact for the jury, and was by them resolved against the appellant.

Appellant next complains that an instruction given by the court did not adequately explain the presumption of innocence. The assignment is without merit. The court instructed the jury that, before the defendants could be found guilty, the state must prove them guilty by the evidence in the case and beyond all reasonable doubt; that the law presumed the defendants innocent of the crime charged, and that the jury must observe such presumption until satisfied from the evidence beyond a reasonable doubt that the defendants were guilty.

Neither is there merit in the contention that an instruction by the court was not an adequate and complete explanation of reasonable doubt. That the term "reasonable doubt" is clearly, though concisely, explained, is patent from a reading of the instruction which is as follows:

"The expression 'beyond a reasonable doubt' has been used by me a number of times in these instructions, and judges sometimes instruct juries at great length about its meaning. It simply means that the proof must be beyond a doubt for which the juror who entertains the doubt can assign a good reason. If any juror has a doubt as to the guilt of the defendant, for which doubt he can assign a good reason, it will be the duty of that juror to vote not guilty, but if there is no such doubt, then it will be the duty of the juror to vote guilty."

There was no error in denying the motion for a new trial. The effect of the affidavits filed in support of the motion was to impeach the testimony of Officer Rummer as to his ability to hear the conversation between appellant and Jamieson.

"Where the only purpose of newly discovered evidence is to impeach or discredit evidence produced at

614

the trial, a new trial will be denied." *State v. Prince,* 154 Wash. 409, 282 Pac. 907.

We have considered the other assignments of error and find them to be without substantial merit.

The judgment is affirmed.

MITCHELL, C. J., FULLERTON, HOLCOMB, and BEALS, JJ., concur.

[1]Reported in 294 Pac. 260.